IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD HUTCHINSON,                          Case No. 3:15-cv-02083-SB

          Plaintiff,

          v.                                   **OPINION AND ORDER**

MCFARLAND CASCADE POLE & LUMBER
COMPANY, a foreign business corporation,

          Defendant.

_____

**BECKERMAN, Magistrate Judge.**

        Donald Hutchinson ("Hutchinson") filed a Complaint against McFarland Cascade Pole &

Lumber Company ("McFarland"), alleging two state statutory claims for unlawful discrimination.[1]

Specifically, Hutchinson alleges in claim one that McFarland violated Oregon Revised Statute

("ORS") § 659A.043 when it did not rehire Hutchinson when he was available to return to full duty

---

[1] McFarland removed this case from Yamhill County Circuit Court pursuant to 28 U.S.C.
§§ 1332 and 1441. (ECF No. 1.)

following a compensable injury. In claim two, Hutchinson alleges that McFarland violated ORS § 659A.040 by discriminating against Hutchinson for filing a workers' compensation claim.

McFarland filed a Motion for Partial Summary Judgment as to Hutchinson's ORS § 659A.043 failure to rehire claim (claim one). On May 4, 2016, this Court heard oral argument and, for the reasons set forth below, the Court grants McFarland's partial summary judgment motion.

## I. BACKGROUND[2]

Pacific Wood Preserving of Oregon ("Pacific Wood") operated a lumber and pole yard. (Compl. ¶ 3.) In December 2002, Hutchinson began working for Pacific Wood as a forklift operator. (Compl. ¶ 3.) In May 2012, while working as a loader and forklift operator in Pacific Wood's pole yard, Hutchinson suffered a work-related injury and utilized the workers' compensation system. (Compl. ¶ 4.) Due to medical complications, Hutchinson was not granted a full medical release until March 2014. (Compl. ¶ 9.)

During the intervening time, Pacific Wood sold all of its assets to McFarland (in November 2013). (Compl. ¶ 6.) Prior to the consummation of the asset purchase agreement, Pacific Wood terminated its entire workforce, including Hutchinson. (Compl. ¶ 6.) Following the November 15, 2013 sale, McFarland resumed only the pole yard side of the business and rehired some of Pacific Wood's former employees. (Compl. ¶ 7.) Hutchinson alleges that all former Pacific Wood employees were aware of the sale, and were given the opportunity to interview for a job with McFarland. (Compl. ¶ 7.) Hutchinson alleges that he was "denied this information and the opportunities because he was on workers' compensation leave." (Compl. ¶ 7.)

---

[2] The parties agreed to stay discovery pending resolution of this early motion for partial summary judgment. The facts relevant to the Court's decision on this motion are set forth in Hutchinson's Complaint, and are not disputed.

After Hutchinson's release to full duty in late March 2014, he requested reinstatement from his previous supervisor, who was then employed by McFarland. (Compl. ¶ 9.) Hutchinson alleges that McFarland disregarded his demand for reinstatement. (Compl. ¶ 9.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).

## III. DISCUSSION

McFarland's summary judgment motion raises two issues: (1) whether McFarland, as the successor employer, is Hutchinson's "employer" within the meaning of ORS § 659A.043, and (2) if McFarland is Hutchinson's employer under ORS § 659A.043, whether McFarland is relieved from liability under that statute because Pacific Wood terminated Hutchinson for a reason unrelated to his workplace injury. (Def.'s Mot. Summ. J. 3.)

### A.    Successor Liability Under ORS § 659A.043

Under ORS § 659A.043(1), "[a] worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, if the position exists and is available and the worker is not disabled from performing the duties of such position. . . ." The Oregon Bureau of Labor and Industries ("BOLI")

is the agency charged with implementing, enforcing, and administering ORS § 659A.043. In that role, BOLI promulgated Oregon Administrative Rule ("OAR") 839-006-0130(11), which extends the statutory duty owed by "the worker's employer" to include a "successor employer."

McFarland argues that ORS § 659A.043 is inapplicable to this case because McFarland is not, and never was, Hutchinson's employer. McFarland contends that BOLI exceeded its authority when it enacted OAR 839-006-0130(11), because the regulation extends liability to a successor employer, which is contrary to the statutory language and legislative history. *See* OAR 839-006-0130(11) (duty to reinstate an injured worker under ORS § 659A.043 extends to successor employers). In response, Hutchinson argues that in promulgating OAR 839-006-0130(11), BOLI properly clarified that liability under ORS § 659A.043 includes successor employers.

### 1.    BOLI's Rulemaking Authority

BOLI has authority to "take all steps necessary to eliminate and prevent unlawful practices [and] . . . unlawful discrimination." ORS § 659A.800. ORS § 659A.805(1)(e) grants BOLI broad authority to adopt rules "[c]overing any . . . matter required to carry out the purposes of this chapter." Pursuant to that statutory grant of authority, BOLI promulgated OAR 839-006-0130 in 1983, to implement ORS § 659A.043. The provision of 839-006-0130 at issue here is subsection (11), which was promulgated in 2002 and provides, in part: "The duty under ORS 659A.043 to reinstate an injured worker to the worker's former position extends to a successor employer to the worker's employer at the time of injury. . . ." The subsection includes a nine-part test to determine whether a respondent is a successor employer.[3] *See* ORS 839-006-0130(11).

---

[3]    The parties agree that the issue of whether McFarland is a successor employer is not presently before the Court.

BOLI's rulemaking authority is limited to effecting the "purposes" of relevant statutes. *See* ORS § 659A.805(1)(e) (expressly limiting BOLI's rule-making authority to effecting "the purposes" of the statutes); ORS § 183.400(4)(b) ("court shall declare the rule invalid" if it "[e]xceeds the statutory authority of the agency"). BOLI's rules must fall within an area the agency is authorized to regulate, and BOLI cannot depart from the legislative policy expressed by the enabling statute. *See J.R. Simplot Co. v. Dep't of Agric.*, 340 Or. 188, 198 (2006) (holding that a court reviewing an agency's rules promulgated in furtherance of the legislative purpose is limited to deciding whether the agency's action effectuated the legislative policy). To the extent an administrative rule is contrary to statutory policy, the rule is invalid as exceeding the statutory authority of the agency. *See Planned Parenthood Ass'n, Inc. v. Dep't Of Human Res. of State of Oregon*, 297 Or. 562, 573-74 (1984) (en banc) (finding rule invalid as inconsistent with directive of the legislature); *see also Springfield Educ. Ass'n v. Sch. Dist.*, 290 Or. 217, 229 (1984) ("To resolve whether the challenged rule is within the statutory authority of the agency, this court need only determine whether the rule is within the range of discretion allowed by the more general policy of the medical assistance program statutes."). Accordingly, the Court must decide whether OAR 839-006-0130(11) is contrary to the legislative policy embodied in ORS § 659A.043.

When an agency's statutory interpretation is at issue, the Court's standard of review depends on whether the disputed statutory term is an exact term, an inexact term, or a delegative term. *See Springfield Educ.*, 290 Or. at 223. "Exact terms" impart relatively precise meanings, and their applicability in a particular case involves only agency factfinding. *Id*. at 223-24 (e.g., "21 years of age," "male," and "30 days"). Consequently, an "exact term" requires no interpretation, and an agency's application of such a term is reviewed for substantial evidence only. *Id*. at 224. "Inexact

Page 5 - OPINION AND ORDER

terms" are less precise. While inexact terms embody a "complete expression of legislative meaning," that meaning may not always be obvious. *Id*. With respect to "inexact terms," the agency, and ultimately the court, must determine what the legislature intended by using those words. *Id*. "Delegative terms" express incomplete legislative meaning that the agency is authorized to complete. *Id*. at 228; *see also Oregon–OSHA v. CBI Serv., Inc.*, 356 Or. 577, 585, 590 (2014) (en banc) (noting examples of delegative terms, such as "good cause," "fair," "undue," "unreasonable," and "public convenience and necessity," and finding that the term "reasonable diligence" is a delegative term because it was not defined elsewhere in the statute). As to "delegative terms," the agency is tasked with completing the general legislative policy decision. *Id*. A court reviews the agency decision concerning a "delegative term" to determine only whether it is within the range of discretion allowed by the more general statutory policy. *Id*. at 229.

McFarland contends that the phrase "the worker's employer" is inexact. (Def.'s Mot. Summ J. 9 & n.5 (citing *Blachana LLC v. Bureau of Labor & Indus.*, 354 Or. 676, 687 (2014) (holding that "successor to the business" is an inexact term).) In response, Hutchinson argues that the phrase "the worker's employer" is delegative, and "that the legislature can seldom craft a statute that is so exact in terminology that the agency can administer the statute without making some decisions about what the legislature intended by its choice of words." (Pl.'s Resp. 10.) Hutchinson further argues that by enacting ORS 839-006-0130(11), BOLI simply clarified "that the duty under ORS 659A.043 extends to successor employers." (Pl.'s Resp. 10.)

The Court finds that the term "the worker's employer" in the statute is "inexact," because it is imprecise, and capable of more than one meaning. *See, e.g., Blachana*, 345 Or. at 687 (finding that "successor to the business" in wage claim statute is an inexact term, capable of more than one

meaning); *J.R. Simplot*, 340 Or. at 197-98 (finding that phrase "reasonably necessary to cover the cost of inspection and administration" is an inexact term that "expresses a complete legislative policy"); *Davis v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 45 F. Supp. 3d 1222, 1234 (D. Or. 2014) (finding that the statutory terms "a preference" and "the preference" were inexact); *Smith v. Bd. of Parole and Post-Prison Super.*, 272 Or. App. 493, 499-500 (2015) (finding that "rule promulgated jointly" is an inexact term that the agency must interpret in accordance with legislative policy).

A court reviews an agency's interpretation of an inexact term "to determine whether the agency's action effectuated the legislative policy, as evidenced by the text and context of the statute." *J.R. Simplot*, 340 Or. at 198. While BOLI's interpretation of the statute, as expressed in OAR 839-006-0130, is not entitled to deference per se, *Blachana*, 354 Or. at 687, it "may be given an appropriate degree of assumptive validity if the agency was involved in the legislative process or if [the court] infer[s] that [the agency] has expertise based upon qualifications of its personnel or because of its experience in the application of the statute to varying facts." *Springfield*, 290 Or. at 227-28; *see also McPhail v. Milwaukee Lumber Co.*, 165 Or. App. 596, 605 (2000) ("Although [BOLI's] rules do not determine the meaning of the statute, they are entitled to substantial deference because of [BOLI's] expertise and the role that the legislature has given it with regard to these statutes."). Another court in this district has noted "that BOLI has a level of expertise and experience that warrants giving" regulations promulgated to implement statutory provisions a degree of assumptive validity. *Davis*, 45 F. Supp. 3d at 1234 (finding that BOLI's regulation implementing a veteran's preference statute is entitled to deference and is consistent with legislative intent); *see also Alvarez v. Ecolab, Inc.*, No. 6:13-cv-1718-MC, 2014 WL 6684910, at *11 (D. Or. Nov. 25, 2014)

("This BOLI definition, 'although not binding, is entitled to [this Court's] careful consideration.'" (quoting *Knapp v. City of North Bend*, 304 Or. 34, 41 (1987))).

### 2.    Statutory Interpretation to Ascertain Legislative Intent

The Court must determine the Oregon Legislature's ("Legislature") intended reach of the phrase "the worker's employer" in ORS § 659A.043, by applying Oregon's statutory interpretation principles. *See Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (a federal court interpreting Oregon law should "interpret the law as would the [Oregon] Supreme Court").

Under Oregon law, the "first step" of statutory interpretation is an examination of the text and context of the statute, in order "to discern the intent of the legislature." *Portland Gen. Elec. Co. ("PGE") v. Bureau of Labor & Indus.*, 317 Or. 606, 610 (1993), *superseded by statute*, ORS § 174.020; *see also State v. Gaines*, 346 Or. 160, 171 (2009) (en banc) (ORS 174.020 did not alter the holding in *PGE* regarding the first step of statutory interpretation). "[A]fter examining the text and context," the court will "consult" the legislative history, "even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis." *Gaines*, 346 Or. at 172. The "evaluative weight" given to the legislative history is for the court to determine. *Id*. At "the third[ ] and final step[ ] of the interpretive methodology," if "the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*.

### a.    Text of the Statute

In accordance with the rules of statutory construction, the Court first examines the text and context of the statute to ascertain legislative intent. In some instances, the text of the statute may provide the best evidence of the Legislature's intent. *See PGE*, 317 Or. at 610 ("In this first level of

analysis, the text of the statutory provision itself is the starting point for interpretation and is the best evidence of the legislature's intent."). The challenged term is "the worker's employer." ORS § 659A.043. In ORS § 659A.001(4)(a), the Legislature defines the term "employer" to include "any person who. . . directly or through an agent, engages or uses the personal service of one or more employees, reserving the right to control the means by which such service is or will be performed." The parties do not contend that the term "employer," standing alone, is ambiguous. McFarland, however, argues that the Legislature's use of "the possessive modifier 'worker's'" forecloses any argument that a successor employer may be held liable under ORS § 659A.043. (Def.'s Mot. P. Summ. J. 4.)

The Court agrees with McFarland that the text of ORS § 659A.043 does not suggest that the Legislature intended to include a successor employer within the definition of "the worker's employer." Specifically, the possessive modifier used in ORS § 659A.043 requires on its face that the employer held liable must have been the *worker's* employer, not merely *an* employer. Furthermore, the definition of "employer" in ORS § 659A.001(4)(a) does not make any reference to subsequent or future employers. The Court finds that the text of the statute is clear and unambiguous, and does not leave open the door to interpret "the worker's employer" to include an employer that never employed the worker. Nevertheless, the Court will also review the context of the statute, and its legislative history.

### b.    Context of the Statute

#### 1.    Prior Amendments

The Court also examines the phrase "the worker's employer" in relation to prior amendments to the statute. *See Boone v. Wright*, 314 Or. 135, 138 (1992) (en banc) (examining amendments to

the statute at issue to analyze context). In 1973, the Oregon Legislature enacted ORS § 659.415, the predecessor statute to ORS § 659.043, "as an integral part of the legislative scheme to prohibit employment discrimination on the basis of physical or mental handicap."[4] *Williams v. Waterway Terminals Co.*, 298 Or. 506, 510 (1985). ORS § 659.415 "is but one of a set of statutes reflecting the legislature's concern to prohibit employment discrimination on the basis of handicap . . . ." *Id*. When originally enacted in 1973, ORS § 659.415 provided, in part: "A workman who has sustained a compensable injury shall be reinstated by *his employer* to his former position of employment or employment which is available and suitable upon demand for such reinstatement . . . ." ORS § 659.415 (1973) (emphasis added).

In 1979, the Oregon Legislature updated the statute to remove the gender of the employee, but otherwise keep the meaning constant, including the requirement of a relationship between the worker and the employer: "A worker who has sustained a compensable injury shall be reinstated by *the worker's employer* to the worker's former position of employment or employment which is available and suitable upon demand for such reinstatement . . . ." ORS § 659.415 (1979) (emphasis added). The statute has been modified several times since 1979, but a possessive modifier ("his" and later, "the worker's") has preceded "employer" since the original enactment of the statute. *See* Oregon Laws, c. 811 §§ 21, 22 (2003); Oregon Laws, c. 22 §§ 469, 470 (2005); Oregon Laws, c. 365 § 11 (2007); Oregon Laws, c. 633 §§ 4, 5 (2007); and ORS § 659A.043 (2015).

McFarland notes that despite amending the statute on numerous occasions, the Legislature elected not to include the term "successor," or incorporate successor liability, into the definition of "employer" in Chapter 659A (or its predecessor chapter, Chapter 659). Indeed, in 1969, the

---

[4] ORS § 659.415 was renumbered ORS § 659A.043 in 2001.

Legislature incorporated the definition of "employer" from ORS § 652.310(1) (the wage and hour statute), but omitted the successor liability language that was included in the definition at that time. *Compare* ORS § 659.010(6) (1969) ("'Employer' means any person . . . who in this state, directly or through an agent, engages or utilizes the personal service of one or more employees. . . ."), *with* ORS § 652.310(1) (1953) ("'Employer' means any person who is conducting in this state directly or through an agent any business engaging personal services of one or more employees *and includes any successor to the business of any employer*, or any lessee or purchaser of any employer's business property for the continuance of the same business, so far as such employer has not paid employees in full . . . ." (emphasis added)). The definition in ORS § 652.310(1) still includes the "successor" language, but the Legislature has never incorporated that language in ORS § 659A.001(4)(a). The Court agrees with McFarland that the Legislature's express inclusion of the term "successor" in its definition of "employer" under Chapter 652, and its omission of that same term in its definition of "employer" under Chapter 659A, is evidence that the Legislature did not intend to include successor liability in ORS § 659A.043.

### 2.    Relevant Case Law when Statute Enacted

The Court also considers the relevant case law at the time the Legislature enacted ORS § 659A.043. *See, e.g., Comcast of Oregon II, Inc. v. City of Eugene*, 346 Or. 238, 254 (2009) ("[W]e must be mindful of . . . settled law as part of our analysis of statutory context."). Under Oregon law, the general rule is that when a corporation purchases the assets of another corporation, the purchasing corporation does not assume the debts and liabilities of the selling corporation. *Erickson v. Grande Ronde Lumber Co.*, 162 Or. 556, 568 (1939). However, the purchaser may be responsible for the seller's liabilities if: 1) the purchasing corporation expressly or impliedly agrees to assume

Page 11 - OPINION AND ORDER

those liabilities; 2) the transaction constitutes a consolidation or merger of the corporations; 3) the purchasing corporation is a "mere continuation" of the selling corporation; or 4) the corporations effectuated the transaction for fraudulent purposes to escape liability. *Id*. at 568; *see also Tyree Oil, Inc. v. BOLI*, 168 Or. App. 278, 282 (2000) (stating that "[t]here are four recognized exceptions" to the general rule). The Legislature was presumably aware of existing case law when it enacted the original statute in 1973, but the Legislature did not seek to distinguish when a successor employer may or may not be liable. *See Oregon–OSHA*, 356 Or. at 593 (noting that the legislature is presumed to know existing case law at time of enactment). As such, a ORS § 659A.043 without successor liability is more consistent with well-settled Oregon law at the time of passage.

### c.    Legislative History of the Statute

While not required, the Court takes the additional step of considering the legislative history of ORS § 659A.043. *See Gaines*, 346 Or. at 172 (even if the statute is unambiguous the court may consider legislative history if it is useful to the court's analysis). McFarland argues that the "legislative history provides no support for successor liability." (Def's Mot. P. Summ. J. 5.) Specifically, McFarland points to the testimony before the Senate Committee on Labor, Consumer, and Business Affairs in support of the 1979 revisions, that "indicates that the purpose of the statute was to hold responsible the entity on whose watch the employee was injured." (Def.'s Mot. P. Summ. J. 5-6 (citing Oregon Senate Committee on Labor, Consumer, and Business Affairs minutes, p. 8 (May 8, 1979) (expressing that it would be unfair for companies not to re-hire workers "after they have recovered from injuries suffered while working for those companies")).) The reference to "entity on whose watch" and "while working for those companies" are express references to the contemporaneous employer entity, and demonstrates that the Legislature sought to hold accountable

the worker's employer, not a successor entity. In contrast, the Court is not aware of any legislative history indicating that the Legislature intended to extend ORS § 659A.043 liability to successor employers.

Having considered the text, context, and legislative history of ORS 659A.043, the Court concludes that the Legislature did not intend to impose successor liability. Accordingly, the Court finds that BOLI exceeded its statutory authority by imposing successor liability when it promulgated OAR 839-006-0130(11). Accordingly, McFarland cannot be held liable under ORS § 659A.043 for not reinstating Hutchinson, because McFarland was never Hutchinson's employer.

**B.     Pacific Wood's Termination of Hutchinson**

Alternatively, McFarland contends that even if ORS § 659A.043 applies to successor entities, Hutchinson's claim fails because Pacific Wood discharged Hutchinson for reasons unrelated to his injury and worker's compensation claim. (Def.'s Mem. P. Summ. J. 10); *see also Lane Cty. v. State*, 104 Or. App. 372, 377 (1990) ("Like BOLI, we conclude that reinstatement rights do not arise if the employer establishes that the worker was discharged from his pre-injury position for reasons unrelated to the injury or to his workers' compensation claim.") Although the Court has held that McFarland cannot be held liable under ORS § 659A.043 as a successor employer, summary judgment is also appropriate on the independent ground that Pacific Wood discharged Hutchinson for a non-protected reason.

The issue turns on the Oregon state courts' interpretation of reinstatement rights, versus BOLI's interpretation of reinstatement rights, under ORS § 659A.043. In *Lane County*, the Oregon Court of Appeals interpreted ORS § 659.415 (predecessor to ORS § 659A.043), and held that a worker's reinstatement rights were dependent on a link between the injury and the discharge. 104

Or. App. at 376. The *Lane County* court noted that BOLI's regulation (OAR 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(2)(c)), which provided that a worker discharged for reasons *not* connected with the injury does not have reinstatement rights, "tipped the scale" in favor of the employer's interpretation that reinstatement rights do not arise when the worker is discharged for reasons unrelated to his compensable injury. *Id*. at 377 (noting that BOLI's rules are not binding, but are entitled to "some weight").

BOLI repealed OAR 839-006-0150(2)(c) following the Oregon Court of Appeals' *Lane County* opinion, and replaced it with OAR 839-006-0150(1)(b), which provides that: "An injured worker does not lose the right to reinstatement or reemployment under ORS 659A.043 or 659A.046 if . . . [a]n employer discharges the injured worker for reasons other than for cause . . . ." Hutchinson argues that the new BOLI regulation is "black letter law" and should control, despite the Court of Appeals' contrary interpretation in *Lane County*. (Pl.'s Resp. 13-14.) The Court disagrees.

The Legislature enacted a statute, the Oregon Court of Appeals interpreted that statute, and the Oregon Supreme Court denied review. Later, BOLI enacted a rule that directly contradicts the Oregon Court of Appeals' interpretation of the statute. However, absent the Legislature's amendment of the statute or an Oregon appellate court revisiting the issue, *Lane County* remains good law.

It is undisputed that Pacific Wood terminated Hutchinson, along with all of Pacific Wood's employees, prior to its sale of assets to McFarland. None of the former Pacific Wood employees had automatic reinstatement rights with the new employer, McFarland. Under the current state of the law, neither Pacific Wood nor McFarland can be held liable under ORS § 659A.043 for failing to reinstate Hutchinson following the sale of the company, because "reinstatement rights do not arise if the employer establishes that the worker was discharged from his pre-injury position for reasons unrelated to the injury or to his workers' compensation claim." *Lane County*, 104 Or. App. at 377

Page 14 - OPINION AND ORDER

("To conclude otherwise would protect injured workers against a normal risk of employment that has no connection with injuries or claims.")

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS McFarland's Motion for Partial Summary Judgment (ECF No. 8). McFarland is therefore entitled to summary judgment on Hutchinson's First Claim for Relief (State Statutory Discrimination in violation of ORS § 659A.043).

IT IS SO ORDERED.

Dated this 20th day of June 2016.

_____
STACIE F. BECKERMAN
United States Magistrate Judge